IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

PENNY SNOWDEN HILL,

     Petitioner,

v.                                                                    CASE NO. 1:09-cv-66-MP-GRJ

SECRETARY, DEPT. OF
CORRECTIONS,

     Respondent.

_____/

## REPORT AND RECOMMENDATION

This case is before the Court on Doc. 1, Petitioner's *pro se* Petition for a Writ of
Habeas Corpus pursuant to 28 U.S.C. § 2254.  The Petition stems from Petitioner's
Alachua County jury-trial conviction for aggravated assault with a deadly weapon, for
which she received a 10-year sentence as a habitual felony offender.  Petitioner raises a
Sixth Amendment claim and eight claims of ineffective assistance of counsel.
Respondent filed a response contending that the Petition should be denied on the
merits.  Doc. 25.  Petitioner was given the opportunity to file a Reply, but has not done
so and the time for doing so has long since expired.  Upon due consideration of the
Petition, the Response, and the state-court record, the undersigned recommends that
the Petition be denied.[1]

## State Court Proceedings

Petitioner was charged in the Eighth Judicial Circuit in Gainesville, Florida (the
"state court") in a criminal information with aggravated assault with a deadly weapon,

---

[1] Because the Court may resolve the Petition on the basis of the record, the
Court has determined that an evidentiary hearing is not warranted.  *See* Rule 8, Rules
Governing Habeas Corpus Petitions Under Section 2254.

specifically a knife.  Respondent's Appendix Exhibit ("Exh.") B at 9.   According to the

relevant police report, on January 3, 2006, Petitioner and a co-defendant, Erica Graham,

Petitioner's daughter, allegedly were both upset by a confrontation that took place earlier

in the day between one of Petitioner/Graham's relatives and a Marie Ann Durr.  Exh. B

at 1.  That evening Petitioner and Graham discussed what they would do once they

found Ms. Durr, and set out to find Ms. Durr.  *Id.*  The two located Ms. Durr's car at a

Chevron gas station and pulled into the gas station parking lot.  *Id.*  Graham entered the

gas station and became engaged in a verbal altercation with Ms. Durr, and Petitioner

then entered the gas station with a knife in her right hand and charged after Ms. Durr

with the knife still in her hand.  *Id.* at 1-2.  Ms. Durr, fearing for her life, ran into the gas

station bathroom in an effort to avoid Petitioner.  *Id.* at 2.

Petitioner's trial took place on July 12, 2006.  Exh. C at 68-194.  Petitioner's

defense at trial was based on the theory Petitioner was not guilty of the charged offense,

but was instead guilty of the lesser included offense of improper exhibition of a

dangerous weapon.  *Id.* at 73.  Petitioner was asked by her counsel prior to trial if she

agreed with this defense, and she stated on the record she did indeed consent to this

theory.  *Id.*  At trial, the state presented three witnesses: Ms. Durr, Ms. Graham and Joy

Robinson, the Gainesville Police Department officer who responded to the clerk's call to

the police on January 3, 2006.  Exh. C.  The defense did not present any witnesses.  *Id.*

On July 12, 2006, Petitioner was convicted of aggravated assault with a deadly

weapon.  Exh. B at 30.  On July 12, 2006, the state filed a notice with the trial court

advising Petitioner it would seek a habitual felony offender sentencing enhancement

pursuant to Fla Stat. § 775.084 at sentencing based upon Petitioner's previous felony

convictions.  *Id.* at 14.  Petitioner was sentenced on August 30, 2006 to 10 years'
imprisonment as a habitual felony offender.  *Id.* at 49-50.  Following her conviction,
Petitioner filed a Notice of Appeal.  *Id.* at 60.

On December 22, 2006, Petitioner filed a Motion To Correct Sentencing Error in
which she asked the state trial court to vacate her sentence as a habitual felony
offender.  Exh. L at 65-73.   She claimed the imposition of the habitual felony offender
violated her rights under the Sixth Amendment to (1) notice in the charging document of
the "temporal component to the habitual felony offender statute," (2) proof beyond a
reasonable doubt of this "temporal component," and (3) a jury determination of this
"temporal component."  *Id.*  The state trial court denied the motion.  *Id.* at 83-84.
Petitioner's conviction was then affirmed *per curiam* without a written opinion by the First
District Court of Appeal in July 2007.   Exh. F.

Petitioner then filed a motion for postconviction relief pursuant to Fla. R. Crim. P.
3.850 asserting eight grounds for ineffective assistance of counsel.  Exh. G at 1-42.
Petitioner asserted her trial counsel was ineffective for: (1) infringing on Petitioner's right
to testify on her own behalf; (2) misadvising Petitioner to decline a favorable plea deal;
(3) failing to call witnesses at trial; (4) failing to request a jury instruction that Petitioner
was on psychotropic medication; (5) failing to properly cross-examine state witness Erica
Graham; (6) conceding the alleged threat to the victim, Ms. Durr, without Petitioner's
consent; (7) conceding the weapon used during the charged offense was a deadly
weapon without Petitioner's consent; and (8) committing cumulative error.  *Id.*

On May 29, 2008 the state court filed a written order assessing Petitioner's eight
ineffective assistance claims under *Strickland v. Washington*, 466 U.S. 668 (1984), and

denying Petitioner's state postconviction motion as to grounds (2) through (8), but giving Petitioner the ability to refile an amended postconviction motion with respect to ground (1). *Id.* at 43-49.  Petitioner filed an amended motion for postconviction relief asserting only ground (1), which the state court assessed under *Strickland v. Washington* and denied. *Id.* at 96-103, 113-14.  Plaintiff appealed the denial of her postconviction motion and her amended postconviction motion to the First District Court of Appeal, which affirmed the denial of both *per curiam* without opinion.  Exh. G at 132-33; Exh. J.

Petitioner filed the instant federal habeas petition, which Respondent concedes is timely.  Petitioner asserts the same eight ineffective-assistance claims she raised in her original and amended state postconviction motions as well as the Sixth Amendment claim she raised in her Motion To Correct Sentencing Error.  Respondent contends Petitioner's Sixth Amendment claim regarding the Confrontation Clause is unexhausted but concedes Petitioner's remaining eight claims are all exhausted.  Doc. 25.  In any event – as explained below – it is clear that Petitioner is not entitled to relief on the merits of any of her habeas claims, and the Court may deny relief notwithstanding any failure to exhaust.  28 U.S.C. § 2254(b)(2).

## <u>Section 2254 Standard of Review</u>

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Under § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the

burden of rebutting the presumption of correctness by clear and convincing evidence."

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also, Carey v. Musladin,* 549 U.S. 70, 74-77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404-06 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams* ).  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state

court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Williams,* 529 U.S. at 412-13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8  (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652  (2004).

### Ineffective Assistance of Counsel

Because Petitioner's claims raise the issue of her trial counsel's effectiveness, a review of *Strickland v. Washington* is appropriate.   To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy.  *Strickland*, 466 U.S. at 686.  The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong.  *Id*. at 697.

When, as here, the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one.  *Harrington v. Richter*, ___ U.S. ___, 131 S.Ct. 770, 786 (2011).  The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1).  As the Supreme Court explained, error alone is not enough, because "[f]or purposes of §

2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 131 S.Ct. at 785 (quotation marks omitted).  And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 786.

When faced with an ineffective assistance of counsel claim that was denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*.  So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*.  Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted.  *Id.*

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one."  *Id.*  at 788.  When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id*.  Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

<u>**Petitioner's Claims**</u>

Upon an independent review of the trial record and the state court's disposition of these claims on postconviction review, and mindful of the high degree of deference that is afforded to the state court's assessment of the merits of Petitioner's claims, the Court concludes that Petitioner has presented no basis for federal habeas relief.

**(1)   Petitioner's Sixth Amendment Claims Regarding Her Sentence as a Habitual Felony Offender and Hearsay Evidence Presented at Sentencing**

The first ground for relief presented in the Petition concerns Petitioner's Sixth Amendment rights.  Petitioner contends her rights under the Sixth Amendment were violated when the habitual felony enhancement under which she was sentenced was not pled in the charging information nor determined by the jury.  Petitioner also argues that her rights under the Sixth Amendment's Confrontation Clause were violated where the prosecution was allowed to introduce as evidence a letter at sentencing which stated Petitioner had not been granted clemency on any of her previous convictions.  Respondent contends this latter ground is at least partially unexhausted.  The Court will consider the habitual felony offender sentencing enhancement issue and the Confrontation Clause issue separately, as each implicates different Sixth Amendment issues.

**a.   Petitioner's Sentencing as a Habitual Felony Offender**

Petitioner contends the state court violated her Sixth Amendment rights in applying the habitual felony offender enhancement because the information under which she was charged did not include the enhancement and because the jury did not find beyond a reasonable doubt that she was a habitual felony offender.  Respondent concedes this issue was properly exhausted but should be denied on the merits under *Apprendi v. New*

*Jersey*, 530 U.S. 466 (2000), and related caselaw.

Applying *Blakely v. Washington*, 542 U.S. 296 (2004), and *Shepard v. United States*, 544 U.S. 13 (2005), to this claim the state court concluded this claim was without merit.  Exh. L at 83-84.  The state court concluded that *Blakely* and *Shepard* have no application to the finding of the fact of the prior conviction or the date of the prior conviction and therefore the Petitioner was not entitled to a jury determination based upon the standard of beyond a reasonable doubt regarding her prior convictions before she was sentenced as a habitual felony offender.  *Id.* at 84.

Petitioner's argument is foreclosed by *Apprendi*, Eleventh Circuit precedent and decisions from federal trial courts rejecting this argument. In *Apprendi* the United States Supreme Court held that any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt , except for sentencing enhancements based upon a prior conviction. 530 U.S. 466, 489 (2000) ("Other than the fact of a prior conviction, any fact which increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").  Neither the *Blakely*[2] decision nor the *Shepard*[3] decision changed this principle.

After *Blakely* the Eleventh Circuit has repeatedly rejected the argument that the Sixth Amendment is violated a sentence is increased based upon a judicial finding of prior

---

[2] In *Blakely* the Supreme Court held that a state judge could not impose a 90 month sentence based solely on the facts admitted in the guilty plea because Washington State law required such an exceptional sentence to be based upon factors other than those used in computing the standard-range sentence. Blakely, 542 U.S. at 303-04.

[3] *Shepard* held that a court may not look beyond the statutory elements, the charging documents, any plea agreement and colloquy or comparable judicial record in determining whether a prior conviction qualified for enhancement under the Armed Career Criminal Act. *Shepard*, 544 U.S. at 16

convictions that were never proved to a jury beyond a reasonable doubt.  *U.S. v.*

*Cantellano*, 430 F.3d 1142, 1147 (11th Cir. 2005).

Federal district courts in Florida which have addressed on habeas review the

identical argument advanced by Petitioner in this case  have rejected such claims under

*Apprendi*.  *See, e.g.*, *MyCoff v. Florida*, No. 2:08–cv–664–FtM–29DNF, 2011 WL 4389779,

at *31-*32 (M.D. Fla. Sept. 21, 2011)( "In contrast, Florida's habitual offender statute is

based upon prior convictions or recidvism, and is completely unrelated to defendant's state

of mind or to any element of the subject offense."); *Williams v. McNeil*, No. 08-80831-CIV,

2010 WL 2634403, at *3-*4 (S.D. Fla. June 9, 2010)("Because [petitioner] Williams's prior

convictions were used only during sentencing to increase his statutory maximum sentence,

his Sixth Amendment rights were not violated.").

Accordingly, as the state court correctly concluded, Petitioner's Sixth Amendment

rights were not violated when she was sentenced under Florida's habitual felony offender

statute even though the charging information did not include the enhancement nor did the

jury find beyond a reasonable doubt she was a habitual felony offender.  This claim is,

therefore, due to be rejected summarily as without merit.

### b.    Confrontation Clause Issue

Petitioner also contends that her rights under the confrontation clause of the Sixth

Amendment were violated when the state introduced, at sentencing, a letter from the

Florida Board of Executive Clemency stating Petitioner had not been granted clemency on

any of her previous convictions.  Respondent contends this Confrontation Clause issue

was unexhausted because Petitioner never raised it on either direct appeal or in her

original or amended postconviction motions.

Petitioner appears to have exhausted this Confrontation Clause claim when she raised this issue in her initial brief on direct appeal. Petitioner stated in the Summary of Argument section of her brief: "In addition, the court, over appellant's Sixth Amendment confrontation clause argument (V4-203), allowed the state to put in evidence a 'clemency letter' which stated that appellant had not been granted clemency from any of her prior convictions.  This was error."  Exh. D at 5.  There were also several other references to this issue in the brief.  *Id.* at 6, 12-13.  Petitioner's conviction, including presumably this ground, was affirmed *per curiam* without a written opinion by the First District Court of Appeal.  Exh. F.  Accordingly, the Court concludes that Petitioner properly exhausted this issue in the state court.

Even though the issue was exhausted there is no merit to the argument. The Supreme Court repeatedly has held that hearsay statements and documents are admissible at sentencing proceedings.  *See*, *e.g.*, *Williams v. New York,* 337 U.S. 241, 246 (1949); *Williams v. Oklahoma*, 358 U.S. 576, 584 (1959).  Furthermore, the Eleventh Circuit recognizes that hearsay evidence may be considered at sentencing in proving a defendant's prior convictions. *U.S. v. Cantellano*, 430 F.3d 1142, 1146 (11th Cir. 2005). That is exactly what occurred at Petitioner's sentencing. Accordingly, Petitioner's Sixth Amendment right to confront witnesses was not violated and therefore Petitioner is not entitled to habeas relief on this issue.

**(2)    Counsel's Advice Concerning Petitioner's Prior Convictions**

As a second ground for relief Petitioner argues that her trial counsel was ineffective for failing to allow her to testify on her own behalf.  Petitioner argues that she was misinformed by her counsel that her prior criminal record would be admitted into evidence

if Petitioner chose to testify.

The state court considered this second alleged error and applied *Strickland*.  Exh. G at 44-45.  The state court found that Petitioner failed to demonstrate how she was prejudiced by not testifying because she did not allege with any specificity the testimony she would have presented.  *Id.* at 45. The state court concluded Petitioner was entitled to correct this defect and refile this claim.  *Id.*  Petitioner then filed an amended postconviction motion with this single ground. Exh. G at 96-102.

In its order denying Petitioner's amended motion for postconviction relief the state court applied *Strickland* and rejected this second claim.  Exh. G at 113-14.  In support of this conclusion, the state court noted the only disputed factual issue at Petitioner's trial was whether Ms. Durr felt threatened by Petitioner's use of the knife.  *Id.* at 114.  Accordingly, the state court concluded there was not a reasonable probability Petitioner's testimony concerning her description of the events inside the convenience store[4] would have affected the outcome at trial and thus Petitioner could not possibly have suffered any prejudice under *Strickland*.  *Id.*

The state court's denial of Petitioner's second ground for relief was not contrary to or an unreasonable application of *Strickland*, because there is not a reasonable probability Petitioner's testimony would have affected the outcome of her trial.  As the state court noted in rejecting this claim in Petitioner's amended postconviction motion, Ms. Durr testified she feared for her life when she was approached by Petitioner, who held a knife in

---

[4] According to Petitioner, if she had testified she would have testified that the victim was violent, it was not Petitioner's idea to find the victim but rather Ms. Graham's idea, and the only reason Petitioner entered the Chevron convenience store was to protect her daughter.

her hand.  Exh. C at 109-10.  Ms. Graham, Petitioner's own daughter, testified that she felt

scared when she saw Petitioner approach Ms. Durr with the knife in hand, even though Ms.

Durr was the object of that threat.  *Id.* at 139.  In addition, as the state court also noted,

there was photographic evidence presented at Petitioner's trial showing exactly how close

Petitioner was to Ms. Durr when the offense took place.  *Id.* at 112.  There was thus a

wealth of evidence supporting Petitioner's conviction on the aggravated assault charge,

and therefore Petitioner's own testimony would not have had any probability of affecting

the outcome of her trial.   Accordingly, the second ground for relief presented in the Petition

is without merit.

**(3)     Counsel's Advice Regarding Acceptance of a Plea Deal**

In her third ground for relief, Petitioner contends that her counsel was ineffective by

advising her to decline a favorable plea offer.  Petitioner argues that her trial counsel

informed her the state was offering a plea deal for a five year minimum mandatory in the

event she chose not to proceed to trial.  She further alleges that she was going to accept

the plea deal, but her counsel advised her not to do so because he believed he would be

successful in having the felony charge of aggravated assault with a deadly weapon

reduced to a misdemeanor.  On the advice of her counsel, Petitioner represents she then

declined the plea deal.

The state court applied *Strickland* to this claim and concluded it was refuted by the

record.  Exh. G at 45.  The state court noted in support of this conclusion that prior to trial,

Petitioner was specifically informed on the record by her counsel that her counsel believed

she would be convicted and he could not promise her anything regarding the outcome of a

trial.  Exh. C at 72-73.  Petitioner stated – also on the record – that she understood.  *Id.*
Her trial counsel then went on to describe the plea deal to her and informed her if she
declined the plea deal, went to trial and was convicted, the state would most likely ask the
state trial judge to impose a habitual felony offender sentence of ten years' imprisonment.
*Id.* at 71-73.  After having been specifically advised of the consequences, Petitioner was
asked by her trial counsel if she understood and still wished to decline the plea deal and
proceed to trial.  *Id.*  Petitioner responded she understood everything her trial counsel had
just told her, and that she wished to reject the plea deal and proceed to trial.  *Id.* at 73-74.

The state court's rejection of this claim was not contrary to or an unreasonable
application of *Strickland*.  Petitioner's counsel specifically informed Petitioner of the terms
of the plea deal, described to her what would occur if she rejected the plea deal and then
informed her he thought she would be convicted and he could not promise anything
regarding the outcome of a trial.  Petitioner acknowledged on the record her understanding
of the consequences and then chose to decline the plea deal and proceed to trial.
Petitioner's claim regarding erroneous advice from her trial counsel regarding the plea deal
is thus directly refuted by the record in this case.  Accordingly, there was no *Strickland*
violation and this ground is without merit.

**(4)   Counsel's Failure to Call Witnesses At Trial**

In the fourth ground for relief, Petitioner contends her trial counsel was ineffective
for failing to call witnesses at her state court trial.  Petitioner argues that her defense at trial
was to demonstrate she was guilty of a lesser included offense. Petitioner contends her
counsel was ineffective for failing to call witnesses to support the lesser included offense.
According to Petitioner, Pretesh Amin, the store manager on duty at the Chevron station

when the incident occurred, should have been called as a witness to impeach the testimony of state's witnesses.

A failure to call witnesses by a habeas petitioner's trial counsel is the type of strategic decision by trial counsel a federal court will not entertain on habeas review. *Waters v. Thomas,* 46 F.3d 1506, 1512 (11 Cir.1995)(*en banc*)("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we seldom, if ever, second guess.").  In considering this ground, the state court applied *Strickland* and rejected this ground, noting Petitioner was specifically aware her counsel's strategy was not to call any witnesses and Petitioner specifically indicated on the record she understood and accepted this trial strategy.  Exh. G at 46.

The state court's rejection of this ground was not contrary to or an unreasonable application of *Strickland*.  Petitioner was specifically aware her defense strategy was not to call any witnesses, but instead to argue for a lesser included offense.  Exh. C at 73.  This is reasonable trial strategy which this Court "should always avoid second-guessing with the benefit of hindsight."  *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992).  Petitioner acknowledged, in open court and on the record, she understood this strategy and agreed to this course of action. Exh. C at 73.  Accordingly, Petitioner's trial counsel was not ineffective in failing to call any witness at Petitioner's trial in state court and the state court's denial of this fourth ground for relief was not contrary to or an unreasonable application of *Strickland*.

## (5) Counsel's Failure to Request Jury Instruction on Psychotropic Medications

As her fifth ground for relief Petitioner  contends her trial counsel was ineffective in failing to request a jury instruction that she was on psychotropic medication.  Petitioner

states she was on Prozac, an anti-depressant, and Trilafon, an anti-psychotic medication, during her trial, which caused her to exhibit anxiety, nervousness, lack of emotion, and other side effects in front of the jury.  Petitioner contends her trial counsel should have requested that the jury be made aware of the medications she was taking and their side effects so the jury would understand her actions during the trial.  This ground is without any arguable merit.

Under Florida law, Petitioner has no right to a jury instruction regarding the fact that she was taking psychotropic medication during trial.  Under Fla. R. Crim P. 3.215(c)(2), a defendant is entitled to a jury instruction regarding psychotropic medication only if the defendant is able to proceed to trial *solely* because the defendant is being administered the psychotropic medication.  FLA. R. CRIM. P. 3.215(c)(2) ("If the defendant proceeds to trial with the aid of medication for a mental or emotional condition, on the motion of defense counsel, the jury shall, at the beginning of the trial and in the charge to the jury, be given explanatory instructions regarding such medication."); *Alston v. State*, 723 So.2d 148, 158 (Fla. 1998)("The plain language of the rule [Fla. R. Crim P. 3.215(c)(2)] requires an instruction on psychotropic medication only when the defendant's ability to proceed to trial is because of such medication.").

In reviewing this claim, the state court quite properly concluded Petitioner's trial counsel did not violate *Strickland* in connection with not requesting a jury instruction on this issue because her competency was never an issue either before or during her trial. Exh. G at 46.  Petitioner was not rendered competent to stand trial solely because she was administered psychotropic medication, and thus the relevant Florida Rule of Criminal

Procedure is not applicable.  Accordingly, Petitioner's trial counsel did not violate *Strickland* by not requesting a jury instruction that did not apply to Petitioner.

**(6)     Trial Counsel's Cross-Examination of Erica Graham**

In her sixth ground for relief, Petitioner contends her trial counsel was ineffective for failing to properly cross-examine co-defendant Erica Graham.  Petitioner states Ms. Graham's testimony at trial differed from her deposition testimony.  The specific difference, according to Petitioner, was Ms. Graham testified in her deposition that Ms. Durr ran from Ms. Graham rather than from Petitioner, while at trial Ms. Graham purportedly testified Ms. Durr did not run until Petitioner entered the gas station with a knife.  Petitioner contends this information would have shown the victim ran in fear from Ms. Graham and not in fear from Petitioner.  This error is meritless.

In denying the motion for post-conviction relief on this ground, the state court applied *Strickland* and noted there was no inconsistencies between Ms. Graham's deposition testimony and her trial testimony and thus concluded there was no error on the part of Petitioner's trial counsel.  Exh. G at 46.  In her deposition, Ms. Graham testified when she entered the convenience store, Ms. Durr "was getting ready to go up to the register and when she was going up to the register I ran upon her and I was like saying some harsh words to her."  *Id.* at 40.  Ms. Graham further testified she said to Ms. Durr: "bitch, why you push my auntie out of that car?  I'm gonna beat your ass."  *Id.*  She further testified Ms. Durr "was like running big; trying to run to the bathroom" and Petitioner came in "with a butcher knife and like - - like from behind, behind me, and that's when my mom was like, bitch., I'm gonna kill your ass or something like that to the point."  *Id.*  Upon further questioning, Ms. Graham stated that when she first entered the convenience store, Ms.

Durr "like kind of ran, tried to run into the bathroom really, but she didn't really make it to the bathroom until my mama came with the knife."  *Id.* at 41.  She further testified "Once my mama came in with the knife, she [Ms. Durr] start[ed] running towards the bathroom to protect herself."  *Id.*

Ms. Graham's testimony at Petitioner's trial was consistent with her deposition testimony.  At trial, she testified she entered the convenience store, approached Ms. Durr and then Ms. Durr put her hands up for protection as she was approached by Ms. Graham.  Exh. C at 135-36.  She further testified Petitioner then entered the store with a small butcher knife in her right hand and threatened to kill Ms. Durr.  *Id.* at 136-38.   As Petitioner walked toward Ms. Durr, Ms. Durr's response was to back away from Petitioner  *Id.* at 136-39, 143-44.  At trial, Ms. Graham further testified Petitioner could not get "real close because Ms. Durr was kind of like backing up so she [Petitioner] couldn't get really close to her [Ms. Durr] because she [Ms. Durr] kind of ran into the bathroom."  *Id.* at 140.  Ms. Durr locked the bathroom door and Ms. Graham and Petitioner then exited the convenience store when the clerk on duty threatened to call the police.   *Id.* at 140,144.

As the state court correctly recognized in ruling on this ground, Ms. Graham's testimony at her deposition and at Petitioner's trial was consistent.  At her deposition, Ms. Graham testified "Once my mama came in with the knife, she [Ms. Durr] start[ed] running towards the bathroom to protect herself,"  Exh. G at 41, while at Petitioner's trial she stated Ms. Durr ran towards the bathroom and then locked herself in the bathroom when Petitioner approached Ms. Durr, knife in hand.  Exh. C at 140.  Thus, there was no material inconsistency that Petitioner's trial counsel could have explored on cross-examination.  Accordingly, the state court properly concluded Petitioner's trial counsel did not violate

*Strickland* in his handling of Ms. Graham's cross-examination.

**(7)      Trial Counsel's Concession That Petitioner Threatened the Victim**

In her seventh ground for relief, Petitioner contends her trial counsel was ineffective for conceding in his closing argument that Petitioner threatened Ms. Durr.  Petitioner represents she previously had told her counsel she did not make that threat and her counsel nevertheless still conceded Petitioner had threatened Ms. Durr in his closing.

The state court applied *Strickland* and concluded the record refuted this seventh ground for relief.  Exh. G at 47.  In support of this conclusion, the state court noted Petitioner specifically agreed with trial counsel's defense strategy of admitting Petitioner was guilty of a lesser included offense of the aggravated assault with a deadly weapon charge.  *Id.*  Furthermore, the state court also noted it was undisputed at trial that Defendant verbally assaulted Ms. Durr while holding the knife.  *Id.*  Lastly, the state court noted Petitioner's trial counsel had never actually conceded that Petitioner said "I'm going to kill you" to Ms. Durr.  *Id.*

The state court's denial of this ground was not contrary to or an unreasonable application of *Strickland*.  In his closing argument, Petitioner's trial counsel never conceded Petitioner threatened Ms. Durr.  As noted by the state court, Petitioner advised the trial court on the record before her trial commenced that she agreed with her counsel's strategy of admitting she was guilty of the lesser included offense of improper exhibition of a dangerous weapon.  *Id.* at 73.  Furthermore, as also noted by the state court, one of the elements of the charge of improper exhibition of a dangerous weapon is the use of the weapon in a threatening manner.  FLA. STAT. § 790.10 ("If any person having or carrying

any dirk, sword, sword cane, firearm, electric weapon or device, or other weapon shall, in the presence of one or more persons, exhibit the same in a rude, careless, angry, or threatening manner, not in necessary self-defense, the person so offending shall be guilty of a misdemeanor of the first degree ..."); *Farley v. State,* 740 So. 2d 5, 6 (Fla. Dist. Ct. App. 1999)("Thus, the information must allege, *and* the evidence must prove, the weapon was exhibited in a 'rude, careless or threatening manner.'")(quoting Fla. Stat. § 790.10). Petitioner's counsel, consistent with the agreed upon trial strategy, appropriately recognized that Petitioner had displayed the knife in a "rude, careless, or threatening manner," an element of the lesser included offense.

The eyewitness testimony at the trial was also consistent with the evidence that Petitioner verbally threatened Ms. Durr while holding a knife in her hand.  At Petitioner's trial Ms. Durr testified Petitioner told her: "b-i-t-c-h, you got to come out the store, I'm going to get you, I'm going to get you" and then Petitioner "went to charging me with the knife." Exh. C at 108.  Ms. Graham testified Petitioner entered the store with a small butcher knife in her right hand and threatened to kill Ms. Durr, specifically stating to Ms. Durr "you b-i-t-c-h, you pushed my sister out the car, I'm going to kill your ass." *Id.* at 137.

Petitioner's trial counsel never admitted Petitioner threatened to kill Ms. Durr.  In addition, Petitioner agreed with a trial strategy that she had committed a lesser included offense, an element of which included evidence that Petitioner displayed the knife in a "rude, careless, or threatening manner."  Finally, the testimony at Petitioner's trial supported the conclusion that she had threatened Ms. Durr.

Accordingly, the state court's denial of Petitioner's seventh ground for relief was not

contrary to or an unreasonable application of *Strickland*.

**(8)     Counsel's Concession to the Knife as a Deadly Weapon**

In her eighth claim for relief, Petitioner contends her trial counsel was ineffective for

conceding in his closing argument without Petitioner's consent that the knife was a deadly

weapon.  According to Petitioner, unclear photos of the weapon were introduced at trial

and several witnesses testified regarding the length of the knife as well as whether the

weapon she carried was a butcher knife or was instead a steak knife.  Petitioner also notes

that she told her counsel she did not make any gestures with the knife nor did she threaten

Ms. Durr with the knife.

The state court applied *Strickland* and concluded this claim was refuted by the

record.  Exh. G at 47.  In support of this conclusion, the state court noted Petitioner agreed

on the record to her counsel's defense strategy of admitting to the jury she was indeed

guilty of the lesser included offense, improper exhibition of a dangerous weapon.  *Id.*  The

state court also noted Petitioner's counsel never actually conceded the knife was a "deadly

weapon."  *Id.*

The state court's denial of this ground was not contrary to or an unreasonable

application of *Strickland*.  Petitioner's trial counsel was not ineffective in conceding

Petitioner carried a deadly weapon.  Contrary to Petitioner's assertion, her trial counsel

never conceded in his closing argument that the knife was a deadly weapon.    Exh. C at

166-71, 178-80.  In support of the defense theory of the case, Petitioner's counsel actually

argued the following: "Had Ms. Hill [Petitioner] been next to her [Ms. Durr] within striking

distance of the weapon, had the weapon been a dangerous weapon like a gun where somebody were to point it at you and say, I'm going to shoot your blank, that's aggravated assault." *Id.* at 170.   Additionally, as noted by the state court, Petitioner advised the trial court on the record before her trial commenced that she agreed with her counsel's strategy of admitting she was guilty of the lesser included offense of improper exhibition of a dangerous weapon. *Id.* at 73.  Accordingly, the state court's denial of this eighth ground for relief was not contrary to or an unreasonable application of *Strickland* because Petitioner's counsel never conceded to the knife as a deadly weapon.

**(9) Trial Counsel's Cumulative Errors**

Petitioner's ninth and final claim for relief is that the cumulative effects of her trial counsel's errors rendered her state court trial fundamentally unfair and resulted in a grave miscarriage of justice.  This claim has no merit.

In rejecting a similar "cumulative error" argument made by a section 2254 petitioner, the Eleventh Circuit has stated "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dept. Of Corrections*, 342 Fed. Appx. 560, 564 (11th Cir. 2009)(*per curiam*). The *Forrest* panel further noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id.* at 564-65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)); *see also Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003)("Because the sum of various zeroes remains zero, the claimed

prejudicial effect of their [the petitioners'] trial attorneys' cumulative errors does not warrant habeas relief.").

In reviewing this claim, the state court concluded it did not violate *Strickland* because a petitioner cannot establish cumulative errors on the part of trial counsel if trial counsel did not commit any specific errors that, considered alone, rose to the level of ineffective assistance.  Exh. G at 48.

As previously discussed, Petitioner has not demonstrated any of her trial counsel's alleged errors, considered alone, rose to the level of ineffective assistance.  Therefore, there are no errors to accumulate and Petitioner was not denied effective assistance of counsel nor has she demonstrated her trial was fundamentally unfair.  *Walls v. McNeil*, No. 3:06-cv-237-MCR, 2009 WL 3187066, at *30-*31 (N.D. Fla. Sept. 30, 2009)("As previously discussed, none of the alleged errors of trial counsel, considered alone, satisfy the threshold standard of ineffective assistance of counsel. Therefore, there are no errors to accumulate. Petitioner was not denied effective assistance of counsel, and he has not demonstrated that his trial was fundamentally unfair.").  Accordingly, Petitioner's ninth claim for relief for relief has no merit.

## Conclusion

For the foregoing reasons it is respectfully **RECOMMENDED** that the Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By A Person In State Custody, Doc. 1, should be **DENIED,** and that a certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 28th  day of February 2012.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.